UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| TRUSTAR FUNDING, et al., | ) | 1:09-cv-01747-CAB |
| | ) | |
| Plaintiffs | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | (Magistrate Judge Kenneth S. McHargh) |
| v. | ) | |
| | ) | |
| DARIUSZ MRUCZYNSKI, et al., | ) | |
| | ) | |
| Defendants | ) | REPORT AND RECOMMENDED |
| | ) | <u>DECISION OF MAGISTRATE JUDGE</u> |

McHARGH, MAG. J.

## I. <u>Factual Background</u>

Plaintiffs Trustar Funding, LLC, and Emerald Isle Lending Co., Inc., bring action against a number of defendants alleging mortgage fraud involving the purchase and sale of land in Staten Island, New York. On December 16, 2008, Defendants Dariusz and Stanislaw Mruczynski, through their company, Bielsko Corp., sold the property at 263 Edgegrove Ave. in Staten Island to James Samuel for $720,000. (Doc. 51, at 7). Mr. Samuel recorded his deed on February 13, 2009. (Id.). He is not currently a party to this action. On December 19, 2008, Bielsko Corp. represented to Defendant Leslie Martin that the title to the property at 263 Edgegrove was free and clear. (Id.). The Mruczynskis claimed to need cash and "required an immediate loan of $100,000.00 for the purchase and sale." (Id.). Defendant Martin is the President of Defendant RP Family, Inc. ("RPF"), for whom she intended to purchase the land. (Doc. 51, at 3). She applied for a loan of $115,000 from Plaintiff Trustar on December 22, 2008. (Doc. 51, at 7). The loan was funded by Plaintiff Emerald Isle and deposited into the escrow account of Defendant attorney Warren Sussman on December 30, 2008. (Doc. 51, at 8). The funds were disbursed from escrow on the same date, much of it going to the

various defendants. (Doc. 51, at 11). $7,866.74 was disbursed to Plaintiff Trustar. (Id.). Defendant Commonwealth Land Title Insurance Company ("CLTI") issued Trustar an American Land Title Association policy "in the amount of $115,571.00 for the purchase and sale of the subject real property," on which it has not paid Trustar. (Doc. 51, at 16). Plaintiffs also contend that CLTI is liable to them "by reason of a Commitment Title Letter, issued by Defendants Sussman and PTI," based on the failed property transaction. (Id.). RPF's promissory note matured on June 30, 2009, and neither RPF nor Leslie Martin have repaid the amount due to Emerald Isle. (Doc. 51, at 15).

Also included among the listed defendants are Paul Sukholinskiy, Vice President of RPF (doc. 51, at 3); Patron Estates ("Patron"), a subsidiary of RPF (doc. 51, at 4); William Martin III, husband of Leslie Martin and President of Patron (id.); Pacific Title, Inc. ("PTI"), a New York corporation that provided the escrow services (doc. 51, at 5); and Boris Nikhman, attorney for the Mruczynskis and Bielsko Corp. (Id.).

Plaintiffs' Third Amended Complaint (doc. 51) was filed on January 14, 2010. Defendant RPF filed a Motion to Dismiss for Improper Venue or, In The Alternative, Motion to Transfer Venue (doc. 52) on January 26. On January 27, Defendants Sussman and PTI filed a Motion to Dismiss the Third Amended Complaint. (Doc. 54). Since the initial filings, Defendants RPF, PTI, Sussman, and CLTI have been joined in those motions to dismiss. (See Docket, p. 11). The Mruczynskis and Bielsko Corp. have not been joined in any of the motions, although Dariusz Mruczynski did include in his answer to the First Amended Complaint affirmative defenses mirroring those of the other defendants' motions, including failure to state a claim, improper venue for the filing of the case, and a lack of personal jurisdiction over him. (Doc. 42, at 8, 9).

## II. Allegations of Complaint

Plaintiff's Complaint contains a number of counts, as follows:

### 1. Fraudulent Misrepresentation

Plaintiffs allege that Defendants Bielsko Corp. and the Mruczynskis "intentionally and fraudulently concealed the true facts regarding their prior sale and conveyance" from the Martins and RPF. (Doc. 51, at 8). This concealment led to loss for Plaintiffs, including "loss of loan proceeds, payment of interest on the loan, other transaction fees and charges, and attorneys fees and expenses." (Doc. 51, at 8-9).

### 2. Negligence

Plaintiffs allege that Defendants Sussman and PTI were negligent in receiving the loan transfer to their escrow account without first "thoroughly check[ing] the status of title prior to closing." (Doc. 51, at 9). Further, Plaintiffs allege that Defendants Sussman and PTI were negligent in failing to record the mortgage documents in a timely manner. (Id.). They claim that this 70 day period between closing and recording resulted in losses to them. (Id.).

### 3. Fraudulent Concealment

This count expands on the negligence allegations – not only were Defendants Sussman and PTI negligent in failing to check the status of title, but they fraudulently concealed this information from Plaintiffs upon learning of their mistake. (Doc. 51, at 10).

### 4. Conversion

Plaintiffs allege that, upon discovering the title defect, Defendants Sussman and PTI should have returned all the money in escrow to Plaintiffs. (Doc. 51, at 10). Instead, they issued drafts, disbursing the money in the escrow account, much of it to the various defendants. (Id). Plaintiffs include in their Complaint a "Chart of Disbursements," indicating to which parties the money was

paid at the end of 2008. (Doc. 51, at 11). Included among these recipients are Defendants Sussman, PTI, Bielsko Corp, Nikhman, and "Patron Estates, by Paul Sukholinskiy." (Id.).

*5. Civil Conspiracy*

Plaintiffs vaguely allege that all the defendants except CLTI maliciously conspired to "deprive[] Plaintiffs of their lawful rights and investments." (Doc. 51, at 12).

*6. Professional Negligence and Breach of Fiduciary Duty*

Plaintiffs allege that Defendants Sussman and Nikhman, as attorneys, hold a special position of trust and have a heightened duty to not be negligent or deceptive. (Id.). Because each was expected to responsibly perform his professional services, their negligence "[gave] rise to further acts of unlawful, wrongful disbursements," causing loss to Plaintiffs. (Id.).

*7. Unjust Enrichment*

Plaintiffs allege that Defendants Bielsko (the Mruczynskis), RPF (Leslie Martin and Sukholinskiy), Patron (William Martin), PTI, and attorneys Sussman and Nikhman have "received funds to which they were not lawfully entitled, particularly after the failure and frustration of the purchase agreement." (Doc. 51, at 13). Plaintiffs contend that this money should have been returned to them, rather than disbursed according to the table at page 11. (Id.).

*8. Fraud*

In a somewhat convoluted timeline, Plaintiffs seem to argue that Defendant Leslie Martin (through RPF) "acquired" the property in question with knowledge that it had already been sold, and then entered into a fraudulent loan agreement with Trustar. On December 16, 2008, the initial purchaser Samuel bought the property from Bielsko Corp. for $720,000. (Doc. 51, at 13). "On or about the same date," Defendant Leslie Martin "completed and executed a Real Property Transfer Report," representing that she had purchased the same property from Bielsko Corp. for $100,000.

(Doc. 51, at 14). Two weeks later, on December 30, Trustar completed a transfer report, indicating that it had purchased the property from RPF (Martin) for $0. (Id.). Then, on February 26, 2009 (13 days after Samuel recorded his deed), Martin brought claims against Bielsko Corp. and CLTI, "before [she] ever notified Plaintiff Trustar of such frustration of purchase and non-sale of the subject property." (Id.). Plaintiffs seem to allege that Martin was aware that she had not received clear title from Bielsko, and therefore sought to pawn the risk of loss off on Trustar. This, apparently, led to intentional concealment of the nature of these transactions by Sussman, PTI, William Martin, and Patron. (Id.).

Plaintiffs observe that these claims against Bielsko Corp. and CLTI were made 58 days after Patron (and its president William Martin, Leslie's husband) had received $41,425 from Defendant Sussman's escrow account. (Id.). Plaintiffs assert that Leslie Martin's title claims "were a gross misrepresentation of the true facts, and intentionally deceptive, intended to defraud and deprive Plaintiffs of the private mortgage loan funds." (Id.). They seem to be implying that these financial transactions were some sort of laundering scheme between businesses run by spouses. [It is unclear how Leslie Martin and RPF bringing suit against the Mruczynskis and Bielsko Corp. (who sold her the land without good title) implicates her in an attempt to defraud Trustar.]

### 9. Breach of Contract

Plaintiffs allege that RPF (through Leslie Martin) "breached the loan agreement and defaulted on the note." (Doc. 51, at 15). The note matured on June 30, 2009, and "Plaintiffs have not been reimbursed by either Defendant to date." (Id.). This breach "result[ed] in monetary loss to the Plaintiffs." (Id.).

### 10. Civil RICO

Plaintiffs allege that the defendants together (besides CLTI) were engaged in a corrupt

enterprise of racketeering, and all "were responsible for the violations comprising prohibited RICO activities, under state and federal law." (Doc. 51, at 16). "Such activity comprised the overall enterprise by the named Defendants, and each performed the several and separate acts in furtherance of it, thereby obtaining and intentionally retaining Plaintiffs' loaned funds, to which they were neither entitled, nor entitled to receive, or to retain." (Doc. 51, at 15). The RICO section of the Complaint (doc. 51, at 15-16) speaks in generalities while asserting a "clear pattern" of "corrupt behavior" and knowledge by all involved. The Complaint mentions that the exhibits are evidence of this "overall enterprise," although Plaintiffs do not explain which exhibits support which allegations and why.

*11. Declaratory Judgment*

Plaintiffs claim that CLTI is liable to them for $115.571.00 (the exact amount of the loan), based on their American Land Title Association insurance policy, because the "sale and transfer was never properly and timely consummated, nor were said funds returned to the lender... The purpose of the title insurance policy was and is intended to insure against loss that may occur in the transfer of title through the purchase of real property." (Doc. 51, at 16). Plaintiffs further allege bad faith on the part of CLTI for refusing to pay their claim and request punitive damages in addition to the cost of the policy. (Doc. 51, at 17).

Plaintiffs' prayer for relief includes "in excess of $115,571.00 on each count and claim hereinabove, and for treble damages against each Defendant under Ohio's RICO statute," as well as fees, expenses, costs, and interest. (Id.).

### III. **Motion to strike**

Defendants move to strike the "Reply Brief of Plaintiffs Opposing Defendants' Motion to

Dismiss Trustar Funding, LLC's Third Amended Complaint," Document 60. (Doc. 61). They cite Local Rule 7.1 which allows a memorandum in support of a moving party's motion (7.1(c)), a memorandum to oppose the motion (7.1(d)), and a moving party's reply memo to the memo in opposition (7.1(e)). Each of these sections includes specific time limits and procedures for filing and service of the memos. Defendants point out that no further filings are authorized by the Local Rules or the Federal Rules, and that this lack of authorization provides grounds to strike the submission under Rule 12(f). (Doc. 61, at 1).

In *Fannie v. Chamberlain Mfg. Corp., Derry Division*, 445 F.Supp. 65, 72 (D.C. Pa.1977), Plaintiffs had moved to strike defendant's memo and affidavit on grounds of non-authorization. The court did not seem troubled by the unauthorized submissions, writing in a footnote: "In light of the fact that plaintiffs had an opportunity to submit a response to the defendant's unsolicited papers, we have considered both defendant's materials and plaintiffs' notes in reply. The interests of justice would appear to be best served by such a resolution under these circumstances." *Id.* In this case, Plaintiffs' reply brief seems to be a legally relevant clarification of its position. It is not "redundant, immaterial, impertinent, or scandalous," which are the types of filings that F.R.C.P. 12(f) seeks to prevent.

Additionally, "only material included in a 'pleading' may be the subject of a motion to strike. ... Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike," *Lowery v. Hoffman*, 188 F.R.D. 651, 653 (M.D. Ala. 1999) (citing *Moore's Federal Practice*, §12.37). Local Rule 7.1 does not provide for a reply to a reply, but there does not seem to be a reason to disallow one. Plaintiffs' document provides clarification for their position in support of their having standing.

## IV. Motions to Dismiss

### A. Inappropriate Venue

Defendants move to dismiss, or at least transfer the case to New York or New Jersey, based on improper venue. Venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated," 28 U.S.C. §1391(a)(2). "Defendants bear the burden of establishing that venue is improper." (Doc. 58, at 4, citing *Moore's Federal Practice*, §110.01). Defendants argue that the property in question is located in Staten Island, New York, and that all the defendants reside in or are incorporated in New York, New Jersey, or Florida. (Doc. 52-1 at 7-8). Plaintiffs concede "other significant events may have occurred in New York and/or New Jersey,"(doc. 58, at 6), which would make venue appropriate there as well. However, "venue may be appropriate in several judicial districts." (Doc. 58, at 3). *See* 28 U.S.C. §1391(a); *Genesis Ins. Co. v. Alfi*, 425 F.Supp.2d 876, 895-96 (S.D. Ohio 2006) ("The fact that substantial activities took place in one district does not disqualify another district if substantial activities took place in the latter district, too").

Defendants concede that RPF and Leslie Martin applied for the loan in Ohio and that the loan was brokered through Trustar in Ohio. (Doc. 52-1, at 4). Plaintiffs insist that despite the actual property at issue being located in New York, this transaction was significant enough to establish appropriate venue. The 6th Circuit has held that the purchase of investments by Florida residents through a Michigan broker (the only Michigan "event"), while not the most significant event or omission of the dispute, was significant enough to warrant a plaintiff's choice of forum there. *See First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998); *see also Securities Service Network, Inc. v. Cromwell*, No. 94-5778, 1995 WL 456374 at *4 (6th Cir., August 1, 1995)

(investments "effected through the services of" a Tennessee corporation made venue there appropriate). Further, a plaintiff is not required to choose "the venue with the most substantial nexus to a dispute... the venue where a majority of the events giving rise to the plaintiff's claim took place... [or] the venue that is the best forum for the adjudication of the lawsuit." (Doc. 58, at 4, citing 10 additional cases from various districts in support). Cases with similar fact patterns from neighboring jurisdictions support this line of holdings as well with regards to the meaning of "substantial." *See e.g. Siegel v. Homestore, Inc.*, 255 F.Supp.2d 451, 456 (E.D.Pa. 2003) (finding Pennsylvania jurisdiction appropriate where a California corporation conducted all of its business over the internet, and closing documents were executed in Pennsylvania).

In this case, the loan was "negotiated, processed and finalized in Cleveland." (Doc. 58, at 5). Plaintiffs list other substantial events that occurred in Ohio including the drafting of the contract, a "choice of law" clause basing the transaction on Ohio law, and a provision for future bills and payments to be sent to Trustar in Cleveland. (Id.). "Courts making venue determinations in contract disputes have looked to such factors as where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred," *Gulf Ins. Co v. Glassbrenner*, 417 F.3d 353, 357 (2nd Cir. 2005). Based on the formation of the loan contract and relevant case law, the brokering of a loan in Cleveland, Ohio through a Cleveland corporation seems substantial enough that venue would be appropriate in the Northern District of Ohio.

### B. District Jurisdiction over Defendants

Defendants contend that Ohio's long-arm statute for personal jurisdiction over a defendant does not reach them. (Doc. 52-1, at 5). The test for personal jurisdiction involves an analysis of whether 1) the defendant purposely availed himself of the privilege of acting there, 2) the cause of

action arises from defendant's activities, and 3) the acts of or consequences caused by the defendant have a substantial connection with the forum state. *See Nationwide Mut. Ins. Co. v. Tryg Intern. Ins. Co.*, 91 F.3d 790, 794 (6th Cir. 1996). "This purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts... [j]urisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum state," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotes and citations omitted).

In *Nationwide*, Defendant Tryg entered into a wide-ranging insurance pool, during an international insurance meeting in Monte Carlo, Monaco. *See Nationwide*, 91 F.3d at 791. Although Nationwide was incorporated in Ohio, the 6th Circuit found that it did not have jurisdiction over Tryg in Ohio. *Id.* at 797. Tryg was only one member of an international insurance pool and never actually solicited any business in Ohio. Its negotiations took place entirely in Monte Carlo, so it had not done enough to purposely avail itself of acting in Ohio. Here, Defendant RPF actively applied for a loan from Trustar in Ohio and the contract indicated an expectation of future dealings in Ohio (choice of law and payment provisions). Nationwide on the other hand, by presenting itself at an international conference, was not merely an "Ohio" insurance company in the same sense that RPF would have recognized Trustar as an Ohio broker. Based on RPF's active participation in the loan process, it is safe to say that it purposely availed itself of acting in Ohio, the cause of action arose over the mortgage loan, and RPF's actions are substantially connected to Ohio, based on the mortgage loan contract. Defendants do not contest that the same can be said for CLTI, who insured the contract between RPF and Trustar.

For these same reasons, though, Plaintiffs should not be able to reach the defendants other than RPF and CLTI, with whom it contracted. Defendants question how "this Court may maintain

personal jurisdiction over" Patron, PTI, Bielsko, and the individual named defendants. (Doc. 52-1, at 5). "The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984). Even assuming that Leslie Martin, as President of RPF, is an appropriate party to this action, her activity in contracting for a loan from Trustar and/or Emerald Isle and failure to repay that loan do not seem implicate anybody who may have defrauded her in a separate transaction. By Plaintiff's own admission, Leslie Martin herself has sued Bielsko. (Doc. 51, at 14). This attempt at recourse is proper for her. She was the second buyer of the land in question and allegedly suffered a loss because her title was not clear.

Plaintiffs use numerous counts, including RICO to implicate Bielsko (including the Mruczynskis and their attorney Nikhman), and negligence to implicate PTI and Sussman for their failure to diligently and responsibly handle the escrow. Beyond the initial complaint, Plaintiffs have failed to respond to Defendants' disagreement with the long-arm issue. By pleading conspiracy, on the other hand, Plaintiffs seem to attempt to remove the actions of the multiple defendants from the realm of "unilateral activity." It is true that if all the defendants were conspiring to scam Plaintiffs out of $100,000, they would be subject to long-arm jurisdiction in Ohio. However, the counts of RICO, conspiracy, and even fraud are so vague as to render it difficult to find an overarching causal connection between these failed property transactions in New York. Ultimately, the appropriate focus for Plaintiffs' action in Ohio seems to be RPF and Leslie Martin, who borrowed money, and CLTI, who insured the loan, not the other unrelated parties into whose hands the money found its way. Defendants Bielsko Corp., the Mruczynskis, Sukholinskiy, Patron, Sussman, PTI, and William Martin did not avail themselves of acting in Ohio and their actions were only indirectly related to the loan that later took place in Ohio. Ohio's long-arm statute would not reach these defendants.

### C. Plaintiff's Standing – Licensing

Defendants claim that Plaintiffs lack standing to sue because Trustar is not a registered mortgage broker. O.R.C. §1322.02 requires mortgage brokers to be licensed by the State of Ohio, and O.R.C. §1703.29 provides that no unlicensed mortgage broker "shall maintain any action in any court until it has obtained such license." Trustar is not a properly registered mortgage broker in Ohio. (Doc. 54, at 4). Because of this, Defendants assert, Plaintiffs' complaint should be dismissed: "It is axiomatic that a corporation that is not properly registered as a mortgage broker and, thus, does not possess the right to act as a mortgage broker, thereafter may not recover alleged damages for those same acts which the corporation did not possess the authority to perform in the first place." (Id.). *See P.K. Springfield, Inc. v. Hogan*, 621 N.E.2d 1253, 1257 (Ohio App. 1993) ("In general, the failure of a corporation to have an Ohio license is a defense to any action maintained by that corporation"). The Southern District of Ohio has declined to recognize the strict "defense" of *Hogan*, holding that dismissal of an action brought by an unlicensed corporation is less equitable and more costly than simply allowing the corporation to register and possibly pay a fine before continuing with the action. *See e.g. Ferron v. Search Cactus, LLC*, No. 2:06-cv-327, 2007 WL 1792331, (S.D. Ohio, June 19, 2007); *Auto Driveway Co. v. Auto Logistics of Columbus*, 188 F.R.D. 262 (S.D. Ohio, 1999). If Trustar is found to be in violation of the licensing statute, outright dismissal of the case would probably not be appropriate. Rather, if it violated the statute, it should be given an opportunity to correctly register.

Regardless of the appropriate remedy, however, Plaintiffs contend that this licensing requirement only applies to brokers who provide "consumer transactions and residential loans," whereas they attempt to distinguish Trustar as "a commercial private lender or broker." (Doc. 58, at 12). Defendants do not contest this assertion that commercial mortgages would fall outside the

scope of the statutes. They respond with a citation to the definitions of "mortgage broker"[1], which is dependent on the residential nature of the mortgage, and "residential mortgage loans"[2]. (Doc. 59, at 3). The ambiguity hinges on the property which is the subject of these transactions – Defendants describe it as "two-family residential property" (doc. 59, at 2), despite the fact that it was going to be titled in the name of a corporation, "Borrower (RP Family, Inc.)." (Id.).

In the contested reply to the reply, Plaintiffs demonstrate that Trustar had sought to cover its bases in the language of the mortgage contract. The contract refers to the money being used "to purchase and rehabilitate an investment property," and contains a section in which "[b]orrower acknowledges that it is engaged in the business of investing in real property and... intends to either lease or resell for profit. Borrower acknowledges that this is a Private Loan for business purposes only and is not for personal, family, household or any other purposes." (Doc. 60, at 2). This distinction, which Defendants have moved to strike, seems to be a valid disclaimer precluding its status as a "residential mortgage loan." Defendants do not advance any law to support their claim that the involvement of "residential" property automatically qualifies the transaction as a "residential mortgage loan," and there does not seem to be much, if any, case law that expands on the definition beyond what is in the statute. (As an unofficial aside observation, the validity of the disclaimer may be further supported by the fact that, eight days later, the best response that Defendants could come up with is a tenuous motion to strike Plaintiffs' explanation.)

Trustar asserts that it "is and was, at all times herein, a commercial, business-to-business

---

[1] including "a person that solicits financial and mortgage information from the public, provides that information to a mortgage broker or a person that makes residential mortgage loans, and charges or receives... consideration... for providing the information," O.R.C. §1322.01(G)(1)(b).

[2] "any loan primarily for personal, family, or household use," O.R.C. §1322.01(X).

private mortgage loan provider and servicer." (Doc. 58, at 12). Regardless of why commercial mortgage loan providers are treated differently than residential with regards to licensing and, consequently, standing, O.R.C §1322 does define "mortgage broker" in the context of residential mortgages, and the *Hogan* case does not address the distinction, only a "general" rule that references §1322 mortgages. *See Hogan*, 621 N.E.2d at 1257. Again, Defendants do not contest the assertion that commercial mortgages would fall outside the scope of the statutes, but only insist that Trustar's offer on its website of "loans on all kinds of real estate" (doc. 59-1) provides further support for its status as an unlicensed *residential* mortgage broker. In the absence of any legal support to the contrary, it seems that Trustar effectively disclaimed itself from having anything to do with "residential loans." Therefore, it would have standing to bring suit in Ohio despite its failure to register. If this is not found to be the case, Trustar should still be given an opportunity to register before this action is dismissed.

### D. Plaintiff's Standing – Damages

Defendants contend that, regardless of Trustar's licensing standing, Trustar has not suffered damages as a result of any of their alleged misconduct. "Trustar has not been damaged because it did not loan the funds in question and was paid exactly what it should have been paid even though the transaction was aborted." (Doc. 54, at 5). As a result, Plaintiff Trustar has failed to state a claim upon which relief can be granted, pursuant to F.R.C.P. 12(b)(6). (Doc. 54, at 6).

Without suffering any damage, a Plaintiff cannot have a cause of action. *See e.g. Saltire Indus., Inc. v. Waller, Lansden, Dortch & Davis, PLLC*, 491 F.3d 522, 531 (6th Cir. 2007) (holding that more than speculative damages need to be shown to support a fraud claim); *Wolford v. Mass. Mut. Life Ins. Co.*, Nos. 01-5694, 02-6336, 2004 WL 360295, 91 Fed.Appx. 411, 415 (6th Cir. Feb.

24, 2004) (no evidence to support a fraud claim where Plaintiff suffered no injury); *Chamberlain v. Jones*, No. 86-5341, 1987 WL 36393 (6th Cir. Feb. 17, 1987) (even assuming a conspiracy, Plaintiff would have suffered no damage as a result of that conspiracy). Defendants reason that because Emerald Isle loaned all the money, there are no damages from Trustar's end: "Trustar may not be the real party in interest as required under Fed. R. Civ. P. 17 because they suffered no injury." (Doc. 52-1. at 3).

In support of this argument, Defendants cite the Private Loan Agreement between Trustar and RPF, Exhibit L: "Lender (Trustar) shall provide a Private Loan to Borrower (RP Family, Inc.) in the amount of $115,571.00... Borrower shall pay to Lender a loan origination fee of $6,541.74." (Doc. 59, at 2). Plaintiffs have since conceded that Trustar was not actually the "lender": "Plaintiff Emerald loaned and electronically transmitted mortgage funds." (Doc. 51, at 2). Further, Trustar's Complaint contains a Chart of Disbursements, showing that it was paid $7,866.74 from the escrow account. (Doc. 51, at 11). Exhibit M breaks this payment down, including $6,541.74 for a Loan Origination Fee, $100.00 for a Loan Application Fee, and $300.00 for a Loan Servicing Fee. (Doc. 59, at 2). "The settlement statement and cancelled checks show [] that Trustar (in whatever role it played) was paid in full and that its attorney was paid in full." (Doc. 59, at 4).

Plaintiffs' (Trustar's) only response to this claim is that the defendants were engaged in "the unlawful conversion and disbursement of Plaintiffs' funds," and for that reason the actual amount of damages and right to recovery is up to a jury. (Doc. 58, at 13). This may be true in the case of Plaintiff Emerald Isle, whose money was placed in escrow and disbursed to the various parties involved in the various transactions. Trustar, however, seems to have been paid in accordance with its contract with RPF. Having not suffered any damage as a result of its dealings with RPF, et al., Trustar does not have standing to bring the suit and should be dismissed from this action for failure

to state a claim per F.R.C.P. 12(b)(6).

If Trustar desires recourse against CLTI for its failure to pay Trustar's insurance claim, that would seem to be more appropriate as a separate action between insurer and insuree, independent of the transactions that took place in New York and New Jersey.

### V. Motion to Transfer – 28 U.S.C. §1404

Defendants argue that if venue is found to be proper in the Northern District of Ohio, the court should transfer the case to the Eastern District of New York per 28 U.S.C. §1404, which provides for a change of venue "[f]or the convenience of parties and witnesses, [and] in the interest of justice." *See* 28 U.S.C. §1404(a). When making this transfer determination, a court should consider the plaintiff's choice of forum, the convenience of the parties and witnesses, the location of relevant documents, the possibility of prejudice in a certain forum, and a forum's ability to resolve a case expeditiously and inexpensively. *U.S. v. Cinemark USA, Inc.,* 66 F.Supp.2d 881, 887 (N.D. Ohio 1999). "Plaintiff's choice of forum should be given 'great' or 'substantial' weight when considering whether to transfer a case under §1404(a)," *Id.* at 888. "[U]nlike defendant forum shopping, plaintiff forum shopping is not an evil to be avoided, but is rather an inherent part of our federal court network." *Id.* at 889.

Defendants argue that the "litigants' interest clearly favor[s] venue in either New York or New Jersey," because a district court there "should be able to compel process over New Jersey residents," and "access to sources of proof... would be most convenient in New York." (Doc. 52-1, at 8-9). Plaintiffs cite the convenience of technology, including teleconferencing and electronic filing, to rebut those assertions (doc. 58, at 11), while reiterating that "the balance must tip **strongly** in favor of a transfer to another forum before such a transfer is granted." (Doc. 58, at 9). *See Mid-*

*West Materials, Inc. v. Tougher Industries*, 484 F.Supp.2d 726, 734 (N.D. Ohio 2007) (substantial events occurred in both Ohio and New York, but case was appropriately filed in Ohio so transfer to New York was inappropriate). Plaintiff further reiterates that both the private loan agreement and the promissory note contained Ohio choice-of-law clauses, so Ohio courts would be better-equipped to decide the case. (Doc. 58, at 10); *See Mid-West*, 484 F.Supp.2d at 734 ("Further... the Court notes that the claim is brought pursuant to Ohio law and not the law of New York"). A forum does not have to be chosen based on the most substantial event, or the best place for the lawsuit. *See Bramlet*, 141 F.3d at 263.

Despite the weight given to a plaintiff's choice of venue, that alone "is not dispositive." *Lewis v. ACB Business Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998); *see also Roberts Metals, Inc. v. Florida Properties Marketing Group*, 138 F.R.D 89, 93 (N.D. Ohio 1991) ("plaintiff's choice is only one factor in the transfer decision"). There are limitations on a plaintiff's choice of forum. "When a plaintiff has little or no connection to a forum... the plaintiff's reason for choosing the forum – and remaining in the forum – is diminished and thus should be given less weight," *Cinemark*, 66 F.Supp.2d at 889. When this is the case, transfer is not likely to result in hardship for the parties. *Id.* Here, because Plaintiff Trustar (the only Ohio party) is not an actual party in interest, transfer to the Eastern District of New York would make resolution much more convenient, as Defendants contend. (Doc. 52-1, at 8-9). In what is shaping up to be a distilled action (or actions) between a Colorado corporation (Emerald Isle) and a New Jersey corporation (RPF) run by a New York resident (Leslie Martin), the only person who would still benefit from resolution in Ohio is Plaintiffs' attorney Stark.

While Plaintiffs' documents do not explicitly concede that venue would be proper elsewhere, they seem unable to deny that fact. (*See e.g.* Doc. 58, at 6: "significant events may have occurred

in New York and/or New Jersey"). Additionally, if the New York court does find evidence of a complicated conspiracy, it will be that much easier to compel process on the multiple potentially-dismissed New York and New Jersey resident defendants to whom Ohio's long-arm statute does not apply. For these reasons, what remains of this action should be transferred to the Eastern District of New York, per Defendants' Motion. (Doc. 52; Doc. 52-1, at 9).

## VI. Conclusion

The Complaint appears to present an action with two parts: The first is based on non-repayment of a loan between the Colorado mortgage lender, Emerald Isle, and New Jersey Defendant RPF (and the other named New York/New Jersey defendants with which it is associated); the second, on non-payment of an insurance policy issued to Ohio Plaintiff Trustar by Defendant insurer CLTI. For the reasons stated above, Trustar has suffered no "loss" under which to make a claim, and should be dismissed for failure to show damages.

Venue for this action is most appropriate in the Eastern District of New York and should be transferred there, as Defendants request. Given the obscurity and lack of specificity in the complaint, it would not be appropriate to summon everybody to this district over an action in which the "main" plaintiff has not demonstrated a connection between most of the defendants and its "damages," or shown that it has even suffered any damages.

# RECOMMENDATION

It is recommended that Defendants' motion to strike Plaintiffs' Reply Brief (doc. 61) be denied, because a brief may not be targeted in a motion to strike. Also, Plaintiffs' Reply Brief (doc. 60) is a legally relevant clarification of their position, and not redundant, immaterial, impertinent, or scandalous.

It is recommended that Defendants' Motion to Dismiss (doc. 54) be granted in part. Plaintiff Trustar has suffered no damage. It is therefore not a true party in interest and should be dismissed.

It is recommended that Defendants' Motion to Transfer (doc. 52) be granted, and the remaining action be transferred to the Eastern District of New York, pursuant to 28 U.S.C. §1404.


Dated: 3/30/2010                         /s/ Kenneth S. McHargh
                                                        Kenneth S. McHargh
                                                        United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).